TUFFY v. NICHOLS et al.

No. 270.

Circuit Court of Appeals, Second Circuit.

June 9, 1941.

Emmet L. Holbrook, of New York City, for appellee.

Charles M. Lyman, of New Haven, Conn., for appellants.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Mrs. Sarah M. Nichols filed a voluntary petition in bankruptcy in the District Court of the United States for the Southern District of New York, December 18, 1912, and was duly adjudicated bankrupt. Within the next few months she removed to Branford, Connecticut, where she died May 29, 1913, without ever having applied for a discharge. Owing to a supposed lack of assets, no trustee was appointed and the bankrupt estate was closed December 8, 1913.

Actually she had held, but had not listed, a remainder interest in the estate of Eli F. Rogers, who had died in Branford in 1899. The life tenant, the widow of the testator, died April 27, 1915; and on Au-

gust 24, 1916, the Probate Court for the District of Branford ordered distribution of a share of the remainder to Sarah M. Nichols, and thereafter accepted the report of distributors appointed by it setting out the sum of $2,613.17 to her estate as her share. Later the Branford Trust Company, which was administrator c. t. a. of the estate of Eli F. Rogers, was also appointed administrator of Mrs. Nichols' estate, on the application of appellant Walter Rogers Nichols; and on June 16, 1917, it transferred this sum of $2,613.17 to a separate account.

Since then this sum has remained undisturbed in the Savings Department of the Trust Company. It had increased to $5,996 on November 16, 1939, when the Trust Company applied to the Branford Probate Court for approval of its account and an order of distribution to Mrs. Nichols' three sons, the appellants here. The probate court, however, ordered notice of these proceedings to be given to the late referee in bankruptcy in the Southern District of New York and to each of the bankrupt's scheduled creditors. Thereupon the bankruptcy estate was reopened January 26, 1940, and a trustee was appointed, who petitioned the District Court of the United States for the District of Connecticut for an order to the Trust Company for the turnover of this sum to him. The petition was referred to a referee, who granted the order which the district court confirmed. This appeal followed.

■ Objection is made to the right of appellants to prosecute this appeal, since they lack legal title to or possession of the moneys in question. We think, however, that they may do so. They were parties to the proceeding, for they were named in the trustee's petition and the order to show cause, they answered the petition on the Trust Company's failure to do so and contested it below, and they will be foreclosed from any subsequent collateral attack on the turnover order. Obviously they are the real parties in interest, being the only claimants to the moneys if the bankruptcy trustee's claim does not prevail. Their status thus recognized below is, we think, sufficient interest to justify their appeal.

■ They, in turn, contest the court's jurisdiction over this matter. But reopening the estate to recover previously unadministered assets was certainly the "cause shown" required by Bankruptcy Act, § 2, sub. a(8), 11 U.S.C.A. § 11, sub. a(8); In re Newton, 8 Cir., 107 F. 429; and it was not foreclosed by the provision now found in § 11, sub. e, 11 U.S.C.A. § 29, sub. e, limiting the bringing of suits by the trustee to two years. In re Schreiber, 2 Cir., 23 F.2d 428, certiorari denied, Schreiber v. Public Nat. Bank & Trust Co., 277 U.S. 593, 48 S.Ct. 529, 72 L.Ed. 1005. Moreover, this order cannot be attacked in a collateral proceeding. Michaels v. Post, 21 Wall. 398, 88 U.S. 398, 22 L.Ed. 520. Nor is there a more substantial objection to the summary nature of the proceeding and its culmination in a turnover order. The administrator claims on behalf of the bankrupt, not adversely, and did not acquire possession until after the date of bankruptcy. The district court therefore has jurisdiction to require delivery to the trustee. Bankruptcy Act, § 2, sub. a(21), 11 U.S.C.A. § 11, sub. a(21). Although appellants claim adversely, they do not have possession and are not subject to the turnover order. Moreover, they consented to the exercise of jurisdiction herein, and may not be heard to object thereafter. Page v. Arkansas Natural Gas Corp., 286 U.S. 269, 271, 52 S.Ct. 507, 508, 76 L.Ed. 1096; In re Pinsky-Lapin & Co., 2 Cir., 98 F.2d 776; In re Prokop, 7 Cir., 65 F. 2d 628.

■ The order of June 16, 1917, appointing the Trust Company administrator of the bankrupt's estate, also ordered a limitation to creditors of the estate of six months from that date in which to file claims; and at the expiration of the period, the administrator made a return showing that no claims had been filed. Appellants contend that the bankruptcy trustee, like the deceased's creditors, loses whatever rights he may have had by his failure to comply with this order. Conn.Gen.Stat. 1930, § 4914. But by the Bankruptcy Act, § 70, sub. a, 11 U.S.C.A. § 110, sub. a, the trustee acquires title to the bankrupt's property as of the date of bankruptcy, and thus claims it as an owner of specific property demanding the possession to which he is entitled. Seemingly under state law such a demand for specific property is not cut off by the order of the probate court under the statute. McDonald v. Hartford Trust Co., 104 Conn. 169, 132 A. 902, 909, 910; Cleaveland, Hewitt and Clark, Probate Law and Practice in Connecticut, 267. But, be that as it may, if the bankruptcy court never relinquished jurisdiction, no order which the probate court might have

made could have adjudicated the trustee's rights, for the relation back of his title brought the property within the exclusive jurisdiction of the bankruptcy court as of the date of the petition, before the custody of the probate court began. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28, certiorari denied 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592.

There is the further question whether the trustee is barred by laches from enforcing his right, or because of the prohibition against suits "by or against", a bankruptcy trustee "subsequent to two years after the estate has been closed." Section 11, sub. d, of the former Bankruptcy Act, 11 U.S.C.A. § 29, sub. d (now appearing as amended in 1938 in § 11, sub. e, supra). Kinder v. Scharff, 231 U.S. 517, 34 S.Ct. 164, 58 L.Ed. 343, where a delayed action by a trustee was not allowed on several grounds, cast some doubt upon, though it did not specifically controvert, the rule in Bilafsky v. Abraham, 183 Mass. 401, 67 N.E. 318, that reopening the estate removed the limitation. But it has been held in interpretation of § 11, sub. d, Stanolind Oil & Gas Co. v. Logan, supra, and of the comparable part of the Bankruptcy Act of 1867, 14 Stat. 518, § 2 (Rev. Stat. § 5057), Dushane v. Beall, 161 U.S. 513, 16 S.Ct. 637, 40 L.Ed. 791; Hammond v. Whittredge, 204 U.S. 538, 27 S.Ct. 396, 51 L.Ed. 606; Yazoo & Mississippi Valley R. Co. v. Brewer, 231 U.S. 245, 34 S.Ct. 90, 58 L.Ed. 204, that the limitation applies only to actions to enforce causes existing at the time of bankruptcy.

The rule is not avoided here merely because the origin of the adverse claim predated bankruptcy. The same is true in Yazoo & Mississippi Valley R. Co. v. Brewer, supra; but there, as here, the claim had not been reduced to possession, and there was no cause of action to enforce until the right to possession was contested after bankruptcy. Moreover, as was noted above, the order below was entered not against these appellants, but against the administrator, which claimed on behalf of the bankrupt by an appointment made four years after bankruptcy, and which never asserted an adverse right.

If it be asserted that state limitations laws were applicable prior to the Chandler Act, 11 U.S.C.A. § 1 et seq., Courtney v. Youngs, 202 Mich. 384, 168 N. W. 441, as they are now made applicable by the new § 11, sub. e, supra—"or within such further period of time as the Federal or State law may permit"—the answer still seems clear. Neither appellants nor the administrator can set up any prescriptive rights to the property, for the former have never had possession, and the latter has never claimed it against the bankrupt.

Further, there was no ground for a finding of laches or abandonment of the property, as in Kinder v. Scharff, supra. The only notice concerning it to creditors was not actual, but a form of publication of the order of the probate court of June 16, 1917, and the fact that Eli F. Rogers' will was a matter of public record in the Branford Probate Court. Cf. Dushane v. Beall, supra; Hammond v. Whittredge, supra. Appellants certainly knew of the bankruptcy and that this asset was not scheduled. Even if there was no intentional or fraudulent concealment, they can hardly plead the equitable defense of laches under those circumstances. In re Cook, D. C.M.D.Pa., 18 F.Supp. 687. As property of unquestioned value, and in no contingency burdensome, it could have been abandoned, even if listed, only by some positive indication of intent to do so. Stanolind Oil & Gas Co. v. Logan, supra; cf. Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, certiorari denied 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561; Small v. Heywood-Wakefield Co., D.C.Mass., 21 F.Supp. 697.

We conclude that there are no procedural bars to the trustee's claim, and turn, therefore, to a consideration of it on the merits. To establish his substantive claim, the trustee must show that the property was such as was transferable by the bankrupt or subject to levy and sale, as required by the Bankruptcy Act, § 70, sub. a(5), prior to the 1938 amendment. Not all contingent interests in Connecticut have been held transferable—see Bartholomew v. Muzzy, 61 Conn. 387, 23 A. 604, 29 Am.St.Rep. 206—but that question is not involved here, since the case turns upon the construction of the Rogers will and whether or not the bankrupt's survival of the life tenant was a condition of her taking. If she took at all, she took an interest so vested as not to be terminated by her death before the life tenant. The provision here important is the fifth paragraph of the will of Eli F. Rogers, disposing of remainder interests

after the death of the testator's wife, as follows:

"Fifth. I give, devise and bequeath to my niece, Emily N. Mabbatt, or her issue, and to my nephew Edward H. Rogers, or his issue all the rest, residue and remainder of my Estate both real and personal, to be divided equally between them (per stirpes) share and share alike (and in the event that either my niece Emily N. Mabbatt, or my nephew Edward H. Rogers, should die before my wife Sophia M. Rogers, leaving no issue living at that time it is my will that all the residue go to the survivor), to them and their heirs forever."

The bankrupt was a daughter of Emily Mabbatt, who died before the testator, and thus the gift took effect only to "her issue." Edward H. Rogers survived the life tenant and no question arises here as to his share.

■■■■ The only problem is whether the devise to Emily's issue was to vest as of the date of the testator's or of the life tenant's death. At the former date Mrs. Nichols was alive; at the latter date she had died survived only by her sons, the appellants here. We think that the district court and the referee correctly decided in favor of the earlier date, and fully justified their decision in the opinions they filed.

The language used is that of a present grant: "I give, devise and bequeath to * * * her issue," and the will speaks as of the date of the testator's death. This language stands in contrast with that used in other paragraphs of the same will to convey other remainder interests: "At the death of my wife * * *, I give and bequeath" certain legacies. Moreover, the grammatical construction of the paragraph clearly indicates the creation of a vested estate subject to divestment. The language outside the parentheses is that of a present and unqualified devise, and that within the parentheses creates a second remainder interest subject to a condition precedent—the death of Emily's issue before that of the life tenant—which must necessarily operate as a condition subsequent to the first remainder to Emily or her issue. Nothing in the language, however, suggests a condition precedent to the first remainder. The policy of the law in favor of the early vesting of estates leads to the same conclusion. Dale v. White, 33 Conn. 294; Farnam v. Farnam, 53 Conn. 261, 2 A. 325, 5 A. 682; White v. Smith, 87 Conn. 663, 89 A. 272, L.R.A. 1917D, 596; Cleaveland, Hewitt and Clark,

Probate Law and Practice in Connecticut, 592, 593.

This interpretation is directly supported by a ruling in Congregational Home Missionary Soc. v. Thames Bank & Trust Co., 127 Conn. 1, 14 A.2d 626, 628, on a testator's direction to pay at the termination of a trust "to said Calvin Frisbie, the sum of Twenty-five Thousand Dollars, and in case of his death before the termination of the said trust leaving issue, the same to go to such issue." Frisbie's death before the termination of the trust, leaving issue, was said to be only a condition of defeasance, and his right to the gift was held to have vested in him at the testator's death.

■■■■ Accordingly the bankrupt's interest in the remainder had vested in 1912, and passed to the subsequently elected trustee as of that year, and the latter is now entitled to possession of the property. It should be noted that this construction of the will was made by the Branford Probate Court in its orders of distribution upon the estate of Eli F. Rogers; and this determination would appear to be binding on these appellants, who are not in a position to attack the jurisdiction of the probate court over the property in question. See Palmer v. Palmer, D.C.Conn., 31 F.Supp. 861, and authorities there cited.

Affirmed.